## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LEGAL CAPITAL GROUP, LLC,<br><br>                   Plaintiff,<br><br>     v.<br><br>SEAN R. CALLAGY, THE LAW OFFICES OF SEAN R. CALLAGY, ESQ., LLC, and CALLAGY LAW PC,<br><br>               Defendants. | Civil Action No.:<br>2:20-cv-5124 (MCA)(MAH)<br><br>***Document Filed Electronically*** |

---

## DEFENDANTS' BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND TO STRIKE A PORTION OF THE PRAYER FOR RELIEF

---

Lawrence S. Lustberg, Esq.
Kevin W. Weber, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
*Attorneys for Defendants*
*Sean R. Callagy, The Law Offices of Sean R.*
*Callagy, Esq., LLC and Callagy Law PC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT .............................................................................................................. 3

I.      The SAC Fails to State a Claim for Breach of Contract Against Sean Callagy. ................ 4

II.     The Claim for Breach of the Covenant of Good Faith Should Be Dismissed. .................. 8

III.    The Fraud Claim Fails is Barred by the Economic Loss Doctrine. ................................. 10

IV.     Plaintiff's Breach of Fiduciary Duty Claim Fails as a Matter of Law. ............................ 13

V.      Plaintiff's Legal Malpractice Claim Must Be Dismissed. .................................. 16

VI.     Plaintiff Should Not Be Able To Plead a Redundant Unjust Enrichment Claim Based on the Same Conduct Underpinning the Breach of Contract Claim. .................... 20

VII.    The Civil Conspiracy Claim Fails as a Matter of Law. .................................... 21

VIII.   The Accounting Claim is Legally Flawed and Must Be Dismissed. ............................... 24

IX.     The Declaratory Judgment Claim is Duplicative and Must Be Dismissed. ..................... 25

X.      The $18 Million Damages Demand Should Be Stricken as Frivolous and Impertinent. ......................................................................................... 26

XI.     The Dismissal Should be With Prejudice. ....................................................... 29

CONCLUSION ........................................................................................................ 30

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Abreu v. Ginnie Mae*,
No. 15-1710, 2015 U.S. Dist. LEXIS 191475 (D.N.J. Nov. 23, 2015) ..................................13

*Alcoa v. Beazer E.*,
124 F.3d 551 (3d Cir. 1997)...................................................................................................26

*Alexander v. CIGNA Corp.*,
991 F. Supp. 427 (D.N.J. 1997) .............................................................................................15

*Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*,
410 N.J. Super. 510 (App. Div. 2009) ..................................................................................17

*Am. Capital Acquisition Partners, LLC v. Fortigent, LLC*,
No. 13-5571, 2014 U.S. Dist. LEXIS 38003 (D.N.J. Mar. 21, 2014).....................................23

*Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*,
No. 12-7141 (ES), 2013 U.S. Dist. LEXIS 180132 (D.N.J. Dec. 23, 2013) ...................14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................4, 10, 17

*United States ex rel. Atkinson v. Pa. Shipbuilding Co.*,
473 F.3d 506 (3d Cir. 2007)....................................................................................................30

*Bd. of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
296 F.3d 164 (3d Cir. 2002).......................................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................................4

*Blanos v. Penn Mut. Life Ins. Co.*,
No. 09-5174, 2010 U.S. Dist. LEXIS 2326 (D.N.J. Jan. 12, 2010)........................................12

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006).......................................................................................................2

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011).......................................................................................................4

*CDK Glob., LLC v. Tulley Auto. Grp., Inc.*,
No. 15-3103 (KM) (JBC), 2016 U.S. Dist. LEXIS 57186 (D.N.J. Apr. 29,
2016) ........................................................................................................................................20

*Chazanow v. Sussex Bank,*
  No. 11-1094 (CCC), 2013 U.S. Dist. LEXIS 113007 (D.N.J. Aug. 9, 2013) .......................... 12

*Cioni v. Globe Specialty Metals, Inc.,*
  618 F. App'x 42 (3d Cir. 2015) ........................................................................................ 9

*Corliss v. O'Brien,*
  200 F. App'x 80 (3d Cir. 2006) ....................................................................................... 26

*Cotter v. Newark Hous. Auth.,*
  No. 09-2347 (JAG), 2010 U.S. Dist. LEXIS 25349 (D.N.J. Mar. 17, 2010) ........................... 6

*Cottone v. Fox Rothschild, LLP,*
  No. A-0420-12T4, 2014 N.J. Super. ............................................................................ 16, 17

*Cox v. Chrysler Grp.,*
  LLC, No. 14-7573 (MAS) (DEA), 2015 U.S. Dist. LEXIS 133393 (D.N.J.
  Sep. 30, 2015) .............................................................................................................. 28

*Craig v. Lake Asbestos of Quebec, Ltd.,*
  843 F.2d 145 (3d Cir. 1988) ............................................................................................. 7

*Creative Concepts Mfg. v. Team Beans Ltd. Liab. Co.,*
  No. 17-cv-6066-BRM-DEA, 2018 U.S. Dist. LEXIS 71891 (D.N.J. Apr. 30,
  2018) ............................................................................................................................ 9

*Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.,*
  No. 09-6566 (MLC), 2010 U.S. Dist. LEXIS 128289 (D.N.J. Dec. 6, 2010) ................... 21, 23

*Delzotti v. Morris,*
  No. 14-7223, 2015 U.S. Dist. LEXIS 120286 (D.N.J. Sep. 9, 2015) .............................. 23, 25

*Dialectic Distribution, LLC v. Power Play Mktg. Grp., LLC,*
  No. 2:18-03388, 2018 U.S. Dist. LEXIS 217827 (D.N.J. Dec. 28, 2018) ............................. 21

*DirecTV, Inc. v. Weikel,*
  No. 03-5300 (JBS), 2005 U.S. Dist. LEXIS 9902 (D.N.J. May 25, 2005) ............................. 27

*Dixon Ticonderoga Co. v. Estate of O'Connor,*
  248 F.3d 151 (3d Cir. 2001) ........................................................................................... 17

*Educ. Impact, Inc. v. Danielson,*
  No. 14-937 (FLW)(LHG), 2015 U.S. Dist. LEXIS 9467 (D.N.J. Jan. 28, 2015) ................... 27

*Fischell v. Cordis Corp.,*
  No. 16-cv-00928 (PGS), 2016 U.S. Dist. LEXIS 131260 (D.N.J. Sep. 26,
  2016) ........................................................................................................................... 16

*Flint Grp. Packaging v. Fox Indus.*,
    No. 16-cv-03009, 2020 U.S. Dist. LEXIS 195388 (D.N.J. Oct. 20, 2020) ............................11

*Garlanger v. Verbeke*,
    223 F. Supp. 2d 596 (D.N.J. 2002) ........................................................................27

*Genter v. Allstate Prop. & Casualty Ins. Co.*,
    No. 11-cv-0709, 2011 U.S. Dist. LEXIS 67840 (W.D. Pa. June 24, 2011) ............................27

*Glenz v. RCI, LLC*,
    No. 09-cv-378 (PGS), 2010 U.S. Dist. LEXIS 4212 (D.N.J. Jan. 15, 2010)............................14

*Gonzalez v. U.S. Bank Nat'l Ass'n*,
    No. 14-7855 (MCA), 2015 U.S. Dist. LEXIS 75620 (D.N.J. June 11, 2015)
    (Arleo, J.) ........................................................................................................24

*Greenfield v. Twin Vision Graphics, Inc.*,
    268 F. Supp. 2d 358 (D.N.J. 2003) ........................................................................5

*H2O Plus, LLC v. Arch Pers. Care Prods., L.P.*,
    No. 10-3089, 2011 U.S. Dist. LEXIS 54767 (D.N.J. May 17, 2011).....................................27

*Hahn v. OnBoard LLC*,
    No. 09-3639, 2009 U.S. Dist. LEXIS 107606 (D.N.J. Nov. 16, 2009) ..................................10

*Heffernan v. Hunter*,
    189 F.3d 405 (3d Cir. 1999)..................................................................................22

*Hottenstein v. City of Sea Isle City*,
    793 F. Supp. 2d 688 (D.N.J. 2011) ........................................................................8

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    No. 11-1857(DMC)(JAD), 2012 U.S. Dist. LEXIS 162800 (D.N.J. Nov. 14,
    2012) ...............................................................................................................13

*Jakubowski v. Fed. Emergency Mgmt. Agency*,
    No. 2:12-cv-02202 (CCC) (JAD), 2013 U.S. Dist. LEXIS 43789 (D.N.J. Mar.
    27, 2013) ..........................................................................................................26

*John Wiley & Sons, Inc. v. Rivadeneyra*,
    179 F. Supp. 3d 407 (D.N.J. 2016) ........................................................................24

*Karachi Bakery India v. Deccan Foods LLC*,
    No. 14-5600 (JMV), 2017 U.S. Dist. LEXIS 180404 (D.N.J. Oct. 31, 2017).........................23

*Kare Distribution v. Jam Labels & Cards LLC*,
    No. 09-00969 (SDW), 2009 U.S. Dist. LEXIS 94600 (D.N.J. Oct. 8, 2009).......................7, 8

*Kopp, Inc. v. United Techs.*,
   223 N.J. Super. 548 (App. Div. 1988) ..................................................6

*Krantz v. Prudential Invs. Fund Mgmt. LLC*,
   305 F.3d 140 (3d Cir. 2002)...............................................................29

*Kumon N. Am., Inc. v. Timban*,
   No. 13-4809, 2014 U.S. Dist. LEXIS 84907 (D.N.J. June 23, 2014)......................9

*Lannin v. NRT Title Agency, LLC*,
   No. 18-15146, 2019 U.S. Dist. LEXIS 146338 (D.N.J. Aug. 27, 2019) (Arleo,
   J.).................................................................................................8

*Lentini v. McDonald's USA*,
   No. 19-4596, 2019 U.S. Dist. LEXIS 169180 (D.N.J. Sep. 30, 2019) ...................24

*Lilac Dev. Grp., LLC v. Hess Corp.*,
   No. 15-7547 (WHW)(CLW), 2016 U.S. Dist. LEXIS 73862 (D.N.J. June 7,
   2016) .............................................................................................26

*Malleus v. George*,
   641 F.3d 560 (3d Cir. 2011)................................................................4

*Monclova v. U.S. Bank Nat'l Ass'n*,
   No. 15-7383 (MCA), 2016 U.S. Dist. LEXIS 106127 (D.N.J. Aug. 11, 2016).............24

*Montclair State Univ. v. Oracle USA, Inc.*,
   2012 U.S. Dist. LEXIS 119509 (Aug. 23, 2012) .......................................12

*Moya v. United Airlines, Inc.*,
   No. 18-cv-14829, 2019 U.S. Dist. LEXIS 13888 (D.N.J. Jan. 29, 2019)................5

*MZL Capital Holdings, Inc. v. TD Bank, N.A.*,
   No. 14-5772, 2016 U.S. Dist. LEXIS 103177 (D.N.J. Aug. 5, 2016) ....................9

*N. Am. Steel Connection, Inc. v. Watson Metal Prods. Corp.*,
   No. 08-4247 (DRD), 2010 U.S. Dist. LEXIS 95594 (D.N.J. Sep. 14, 2010) .............6

*Oestreicher v. Rutgers*,
   No. 02-959 (MCA), 2015 U.S. Dist. LEXIS 144785 (D.N.J. Oct. 26, 2015)..........15, 18

*Oliver v. Funai Corp.*,
   No. 14-cv-04532, 2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21, 2015).............22

*In re Palmieri*,
   76 N.J. 51 (1978) .............................................................................19

*Peters v. United States HUD*,
  No. 04:06057 (RBK), 2006 U.S. Dist. LEXIS 4727 (D.N.J. Feb. 1, 2006)...........................21

*Qile Chen v. HD Dimension, Corp.*,
  No. 10-863 (FLW), 2010 U.S. Dist. LEXIS 120599 (D.N.J. Nov. 15, 2010) ..................11, 13

*Rainbow Apparel, Inc. v. KCC Trading, Inc.*,
  No. 9-CV-05319, 2010 U.S. Dist. LEXIS 51664 (D.N.J. May 26, 2010) .............................24

*Ribble Co. v. Burkert Fluid Control Sys.*,
  No. 15-6173, 2016 U.S. Dist. LEXIS 161746 (D.N.J. Nov. 22, 2016) ...................................11

*RNC Sys. v. Modern Tech. Grp., Inc.*,
  861 F. Supp. 2d 436 (D.N.J. 2012) ......................................................................................12

*Royale Luau Resort, LLC v. Kennedy Funding, Inc.*,
  No. 07-1342 (HAA), 2008 U.S. Dist. LEXIS 11902 (D.N.J. Feb. 19, 2008)........................20

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010).............................................................................................4, 17

*United States ex rel. Schumann v. AstraZeneca Pharm. L.P.*,
  769 F.3d 837 (3d Cir. 2014).................................................................................................29

*Senior Settlements, LLC v. Growth Tr. Fund*,
  No. 05-777 (JBS), 2008 U.S. Dist. LEXIS 15639 (D.N.J. Feb. 27, 2008) ..............................5

*In re Silverman*,
  113 N.J. 193 (1988) ..............................................................................................................19

*Speeney v. Rutgers*,
  673 F. App'x 149 (3d Cir. 2016) .....................................................................................16, 18

*Staff4Jobs, LLC v. List Logistics, LLC*,
  No. 3:18-cv-13399-BRM-LHG, 2019 U.S. Dist. LEXIS 107443 (D.N.J. June
  27, 2019) ................................................................................................................................7

*State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*,
  646 F. Supp. 2d 668 (D.N.J. 2009) .....................................................................7, 8, 11, 14

*Sunkett v. Misci*,
  183 F. Supp. 2d 691 (D.N.J. 2002) ......................................................................................22

*Svigals v. Lourdes Imaging Assocs., P.A.*,
  No. 18-1736 (NLH/JS), 2018 U.S. Dist. LEXIS 200251 (D.N.J. Nov. 27,
  2018) .....................................................................................................................................13

*TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*,
    No. 12-3355 (RBK/JS), 2013 U.S. Dist. LEXIS 162025 (D.N.J. Nov. 14,
    2013) ........................................................................................................................9

*Tolia v. Dunkin Brands*,
    No. 11-3656, 2011 U.S. Dist. LEXIS 142170 (D.N.J. Oct. 7, 2011) ....................24

*Toll JM EB Residential Urban Renewal LLC v. Tocci Residential, LLC*,
    No. 16-5422 (PGS), 2020 U.S. Dist. LEXIS 89601 (D.N.J. May 21, 2020)........5, 6

*Trico Equip., Inc. v. Manor*,
    No. 08-5561, 2011 U.S. Dist. LEXIS 17936 (D.N.J. Feb. 22, 2011) ....................22

*Trs. of the Local 888 Health Fund v. Kissler & Co.*,
    No. 14-8097 (WJM), 2015 U.S. Dist. LEXIS 129273 (D.N.J. Sep. 25, 2015).........6

*United Ass'n of Plumbers & Pipefitters Local 322 of S. N.J. v. Mallinckrodt ARD,*
    *LLC*,
    No. 20-188, 2020 U.S. Dist. LEXIS 148343 (D.N.J. Aug. 18, 2020) ...................23

*Watkins v. Bai Brands, LLC*,
    No. 3:17-cv-2715-BRM-DEA, 2018 U.S. Dist. LEXIS 27237 (D.N.J. Feb. 20,
    2018) ......................................................................................................................26

*Westcor Land Title Ins. Co. v. Alicea*,
    No. 19-8474 (SDW) (LDW), 2019 U.S. Dist. LEXIS 213079 (D.N.J. Dec. 10,
    2019) ................................................................................................................18, 19

*World Express & Connection, Inc. v. Crocus Invs., LLC*,
    No. 15-8126 (KM) (MAH), 2020 U.S. Dist. LEXIS 156525 (D.N.J. Aug. 28,
    2020) ......................................................................................................................22

**Statutes**

28 U.S.C. § 2201.............................................................................................................25

28 U.S.C. § 2201(a) ........................................................................................................26

N.J.S.A. 2C:21-19...........................................................................................................29

**Other Authorities**

LEGAL NEWSLINE, "Boyhood friendship doesn't stop litigation funder from suing
    N.J. personal injury lawyer for $18M," *available at*
    https://legalnewsline.com/stories/536181145-boyhood-friendship-doesn-t-
    stop-litigation-funder-from-suing-n-j-personal-injury-lawyer-for-18m (last
    visited December 11, 2020) ....................................................................................29

NEW JERSEY LAW JOURNAL, "New Jersey Law Firm Accused in Suit of
    Defaulting on $18M Debt to Litigation Funder," available at
    https://www.law.com/njlawjournal/2020/04/27/new-jersey-law-firm-accused-
    in-suit-of-defaulting-on-18m-debt-to-litigation-funder/ (last visited December
    11, 2020) ..................................................................................................................29

**Rules**

Fed. R. Civ. P. 8.........................................................................................................................3

Fed. R. Civ. P. 8(d)(3)..............................................................................................................20

Fed. R. Civ. P. 12(f)...........................................................................................................27, 29

Local Civil Rule 8.1..................................................................................................................27

New Jersey Rule of Professional Conduct 1.5(b) .......................................................................17

Rule 9(g) ..................................................................................................................................23

Rule 12(b)(6).............................................................................................................................4

Defendants Sean R. Callagy ("Mr. Callagy"), The Law Offices of Sean R. Callagy, Esq., LLC ("SRC LLC") and Callagy Law PC ("Callagy Law") respectfully submit this brief in support of their motion to dismiss, in part, the Second Amended Complaint (ECF 27).

## PRELIMINARY STATEMENT

The pending Second Amended Complaint is Plaintiff's third attempt to plead its case against Defendants.  In this latest iteration, Plaintiff asserts ten (10) separate causes of action. Other than  breach of contract, all of these claims are legally flawed.  Indeed, this case is nothing more than a simple breach of contract case by a legal funder (Legal Capital Group, LLC, "LCG"), against a law firm (SRC LLC), that received certain contingent, non-recourse cash advances to fund specific personal injury litigations that were to be repaid through potential attorneys' fee recoveries.  Instead, Plaintiff overcharges and unnecessarily complicates that simple case by:

- suing an individual attorney who never agreed to be personally liable and did not sign the contracts in his personal capacity;
- bringing claims for breach of the covenant of good faith and fair dealing and unjust enrichment that are based on the same conduct as the breach of contract claim;
- seeking an equitable remedy of an accounting when the allegations admit that regular course discovery would be an adequate remedy at law;
- asserting fraud and breach of fiduciary duty claims based on conduct regarding contractual performance, which is barred by the economic loss doctrine;
- claiming legal malpractice, despite failing to plead any plausible facts establishing the existence of an attorney-client relationship, and that the drafting of these contracts was within that scope;
- asserting a civil conspiracy claim, though one defendant (Mr. Callagy) cannot legally conspire with his own entities;
- seeking a declaratory judgment duplicative of the breach of contract claim; and
- perhaps most egregiously, claiming (improperly under the Local Rules) that $441,794 in principal advances grew to ***over $18 million*** in seven (7) years, a damages calculation that is both factually and mathematically illogical and legally frivolous.

Because Plaintiff has now had multiple opportunities to try to plead its claims, these legally deficient and implausible claims should be dismissed with prejudice.  In sum, other than the breach of contract claim, the entire Second Amended Complaint should be dismissed.

## STATEMENT OF FACTS

Plaintiff LCG is a litigation funder, established in 2010, and headquartered in Florida. (Second Amended Complaint ("SAC"), ¶¶ 1, 4, 29.)  SRC LLC is a law firm in Paramus, New Jersey established on November 2, 2005.  (SAC ¶ 6; *see also* Weber Decl., Ex. A.)[1]  As of December 11, 2020, SRC LLC is an active entity in good standing.  (Weber Decl., Ex. B.)  Callagy Law is a professional corporation formed in 2015.  (Weber Decl., Ex. C.)  Plaintiff alleges that Callagy Law is a successor-in-interest or alter ego of SRC LLC, created to evade SRC LLC's debts to the Plaintiff.  (SAC ¶¶ 8-13, 63-64, 67-88.)

Those alleged debts arise from two contracts between Plaintiff and SRC LLC.  In March 2013, LCG and SRC LLC entered into the so-called "Funding Agreement" here at issue.  (SAC ¶ 31, Ex. 1.)  The Funding Agreement was signed by SRC LLC (via its member, Mr. Callagy) and by LCG (via its owner, George Prussin).  (SAC, Ex. 1 at 7.)  While there is a separate signature block for Mr. Callagy personally, Mr. Callagy specifically executed the Funding Agreement only on the signature block for SRC LLC (the one for him personally remained blank).  (*Id.*)

The details of the Funding Agreement are not relevant to this motion other than that the contract called for LCG to receive a "growth factor" of "2.99% per annum, compounded monthly" on its advances used for operational expenses and "4.99% per annum, compounded monthly" on its advances that are reimbursed from attorneys' fees SRC LLC might receive in a certain set of cases.  (SAC, Ex. 1, ¶ 4.)  Plaintiff alleges that it made sixteen (16) separate advances totaling

---

[1]  These documents obtained from the New Jersey Secretary of State are public records and properly considered on a motion to dismiss.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider . . . matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.") (quotation omitted).

$441,794.64 (SAC ¶ 37) and that Defendants breached the Funding Agreement by refusing to provide information about the cases Plaintiff funded and not repaying the advances. (SAC ¶ 45.)

In addition to the Funding Agreement with SRC LLC, Plaintiff entered into a separate agreement in early 2013 with the law firm Aromando & Light, LLC. (SAC ¶ 46, Ex. 2 ("the Light Agreement").) SRC LLC was a limited party to the Light Agreement, insofar as SRC LLC agreed to a cross-collateralization provision that would secure the advances made to Aromando & Light in the event that those matters did not generate enough funds to repay the advances to the Plaintiff. (SAC ¶ 51.) According to the SAC, the principal amount of $150,000 owed under the Light Agreement has grown to the capped amount of $450,000. (SAC ¶ 54.) Plaintiff acknowledges receipt of $67,000 in payments, allegedly leaving a balance due of $383,000. (SAC ¶ 62.)

In addition to the contractual relationship, Plaintiff also attempts to plead facts to support a fiduciary relationship, and that Mr. Callagy and/or his law firms provided legal representation to Plaintiff and/or its principal, Mr. Prussin. For example, the SAC says that Mr. Callagy and Mr. Prussin have known each other since Mr. Callagy was 13 years old, attended family events together, and developed a "close familial bond." (SAC ¶ 18.) Mr. Prussin allegedly supported Mr. Callagy's legal career by giving him office space, and retaining him for business and personal legal matters. (SAC ¶¶ 19-27.) As discussed further in this brief however, Plaintiff does not plead facts regarding the attorney-client relationship as between LCG and any of the Defendants, other than to conclusorily state that one existed, and that the contracts at issue were drafted by Mr. Callagy on LCG's behalf. (SAC ¶¶ 25, 31, 48, 169, 171.)

## ARGUMENT

Other than the breach of contract claim against SRC LLC (and its alleged "alter ego," Callagy Law), Plaintiff's ten (10) count pleading does not pass the basic pleading standards to proceed. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the court's "inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Here, many of the causes of action are supported only by conclusory statements, and such statements "are not entitled to a presumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011);; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (courts should "disregard legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'"). The Court should dismiss the entire SAC, other than the breach of contract claims against SRC LLC and Callagy Law.

## I.     <u>The SAC Fails to State a Claim for Breach of Contract Against Sean Callagy.</u>

The SAC improperly names Mr. Callagy as a defendant. The reasons for this are clear: the documents appended to the Complaint establish that he did not execute either of the two contracts in his personal capacity, and the SAC contains absolutely no allegations that would support a legal theory that would permit piercing the corporate veil to impose personal liability on Mr. Callagy. Even assuming, as the Court must, that the facts set forth in the Complaint are true, *see, e.g.*, *Santiago*, 629 F.3d at 131, there is no basis to sue Mr. Callagy personally for SRC LLC's alleged breaches of the contracts. The Funding Agreement was signed by Mr. Callagy "on behalf of" SRC LLC. (SAC, Ex. 1 at 7.) Indeed, there is a separate signature block for Mr. Callagy personally,

which he did **not** execute.[2]   (*Id.*)   "Breach of contract complaints must establish four elements to survive a motion to dismiss: (1) the parties entered into a contract; (2) the plaintiff performed under the contract; (3) the defendant breached the contract; and (4) the breach caused an alleged loss." *Moya v. United Airlines, Inc.*, No. 18-cv-14829, 2019 U.S. Dist. LEXIS 13888, at *5-6 (D.N.J. Jan. 29, 2019) (citation omitted).   Here, the SAC does not satisfy the first element, as it does not plead facts that would support the existence of a contract between Plaintiff and Mr. Callagy. Indeed, it is a fundamental principle that "under New Jersey law, 'an action on a contract cannot be maintained against a person who is not a party to it[.]'" *Toll JM EB Residential Urban Renewal LLC v. Tocci Residential, LLC*, No. 16-5422 (PGS), 2020 U.S. Dist. LEXIS 89601, at *24 (D.N.J. May 21, 2020) (quotation omitted).   Thus, to adequately allege, that Mr. Callagy is a party to the contract, Plaintiff must show that it formed a contract with him, and the SAC does not contain the requisite elements of contract formation with Mr. Callagy.   *Senior Settlements, LLC v. Growth Tr. Fund*, No. 05-777 (JBS), 2008 U.S. Dist. LEXIS 15639, at *12-13 (D.N.J. Feb. 27, 2008).

First, the SAC contains no plausible allegations that Mr. Callagy personally agreed to be bound by any agreement.   Most obviously, it is indisputable that he did not sign it in his personal capacity—which would be a clear manifestation of acceptance.   *Greenfield v. Twin Vision Graphics, Inc.*, 268 F. Supp. 2d 358, 375 (D.N.J. 2003) ("A signature is the ultimate form of express assent to a contract").   The SAC attempts to overcome this hurdle with two allegations— first, that Mr. Callagy personally drafted the agreements (SAC ¶¶ 31-32, 46-48); and second, that he initialed the schedules attached to the Funding Agreement (SAC ¶ 40).   But neither of these facts is sufficient to plausibly allege a manifestation by Mr. Callagy that he was to be **personally**

---

[2] Likewise, he is not a party to the Light Agreement and did not sign it in his personal capacity, but rather—very specifically—only on behalf of SRC LLC.   (SAC, Ex. 2.)

bound. *Kopp, Inc. v. United Techs.*, 223 N.J. Super. 548, 558 (App. Div. 1988) (unsigned agreement, even though drafted by plaintiff and on its letterhead, was unenforceable); *Trs. of the Local 888 Health Fund v. Kissler & Co.*, No. 14-8097 (WJM), 2015 U.S. Dist. LEXIS 129273, at *11 (D.N.J. Sep. 25, 2015) (dismissing claim regarding unsigned document where "there are no factual allegations in the Complaint . . . that [defendant] accepted the MOU."); *Cotter v. Newark Hous. Auth.*, No. 09-2347 (JAG), 2010 U.S. Dist. LEXIS 25349, at *13 (D.N.J. Mar. 17, 2010) (dismissing claim where "there existed an unsigned document, intended to act as the final contractual agreement."); *Toll JM*, 2020 U.S. Dist. LEXIS 89601, at *24 (same).  Simply put, Plaintiff has not alleged any facts—oral conversations, personal conduct, other writings, or anything else—showing that Mr. Callagy agreed to be ***personally*** bound.

Plaintiff also alleges that Mr. Callagy is personally liable under a veil piercing[3] theory, by which he would be personally liable for SRC LLC's debts.  Plaintiff, however, fails to plead the requisite facts to sustain such a theory.  Courts in New Jersey have held that "[i]n the absence of fraud or injustice, courts will not pierce the corporate veil to impose liability on a corporation's owners and officers." *N. Am. Steel Connection, Inc. v. Watson Metal Prods. Corp.*, No. 08-4247 (DRD), 2010 U.S. Dist. LEXIS 95594, at *26 (D.N.J. Sep. 14, 2010).  Specifically, when a plaintiff seeks to pierce the corporate veil to impose corporate obligations on an individual, "personal liability will only be imposed if it is demonstrated that the officer or director disregarded the corporate form and utilize[d] the corporation as a vehicle for committing equitable or legal fraud."

---

[3] Callagy Law is also not a party to the contracts.  However, Plaintiff's SAC pleads facts (albeit ones that will ultimately be shown to be false) regarding a relationship between SRC LLC and Callagy Law.  (SAC ¶¶ 63-88.)  Thus, Defendants do not move, at this time, to dismiss the breach of contract claim as against Callagy Law.

*Staff4Jobs, LLC v. List Logistics, LLC*, No. 3:18-cv-13399-BRM-LHG, 2019 U.S. Dist. LEXIS 107443, at *12-13 (D.N.J. June 27, 2019) (quotation omitted).

Thus, "[i]n order to state a cognizable claim for piercing the corporate veil, a plaintiff must show that: (1) the corporation is organized and operated as a mere instrumentality of a shareholder, (2) the shareholder uses the corporation to commit fraud, injustice or circumvent the law, and (3) the shareholder fails to maintain the corporate identity." *Kare Distribution v. Jam Labels & Cards LLC*, No. 09-00969 (SDW), 2009 U.S. Dist. LEXIS 94600, at *23-24 (D.N.J. Oct. 8, 2009) (citing *Bd. of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171-72 (3d Cir. 2002)). *See also State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (dismissing claims against individual defendants and holding "[i]n New Jersey, two elements must be shown to pierce the corporate veil: First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.") (quotation omitted). Thus, as the Third Circuit has catalogued them, there are various factors that are typically considered in determined whether the corporate form may be pierced. *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (setting forth eight factors, including gross undercapitalization and failure to observe corporate formalities, among others).

In the SAC, Plaintiff pleads some facts as to an alleged unity of identity as between SRC LLC and Callagy Law (*e.g.*, comingling of finances (SAC ¶¶ 57-62), trading under the same name (*id.* ¶¶ 63-64), operating in the same location (*id.* ¶¶ 68-70), and having the same employees (*id.* ¶¶ 75-79).) But Plaintiff does not plead any facts sufficient to pierce the corporate veil and impose personal liability on Mr. Callagy. For example, there are no allegations that "(1) [SRC LLC] is

organized and operated as a mere instrumentality of [Mr. Callagy], (2) [Mr. Callagy] uses [SRC LLC] to commit fraud, injustice or circumvent the law, and (3) [Mr. Callagy] fails to maintain [SRC LLC's] identity." *Kare Distribution*, 2009 U.S. Dist. LEXIS 94600, at *23-24 (citation omitted)).  In other words, there are no facts in the SAC even suggesting that "the separate personalities of the corporation and the individual no longer exist." *State Capital Title*, 646 F. Supp. 2d at 679 (D.N.J. 2009) (quotation omitted).

Of all the necessary factors that would sustain such a claim, the only ones even vaguely touched upon are undercapitalization and/or insolvency, to which the SAC merely states the unadorned conclusion that "[u]pon information and belief, SRC LLC is insolvent, and unable to meet its financial obligations" under the contracts.  (SAC ¶ 84.)  This, of course, is plainly insufficient to warrant Mr. Callagy's personal continuation in the case.  *Lannin v. NRT Title Agency, LLC*, No. 18-15146, 2019 U.S. Dist. LEXIS 146338, at *12 (D.N.J. Aug. 27, 2019) (Arleo, J.) (dismissing individual where no facts to support that the entity was "'merely a façade' for [individual defendant's] operation"); *Hottenstein v. City of Sea Isle City*, 793 F. Supp. 2d 688, 691-92 (D.N.J. 2011) (same).  For these reasons, Counts I and II should be dismissed as to Mr. Callagy.

## II.   The Claim for Breach of the Covenant of Good Faith Should Be Dismissed.

Count III of the SAC alleges a breach of the covenant of good faith and fair dealing.  The alleged breach is based on Defendants' purported failure to make payments under the contracts, failing to provide Plaintiff information to which it was entitled under those contracts, and forming the alter ego Callagy Law entity so that SRC LLC could escape its debts.  But this claim must be dismissed as it is based on the exact same conduct as allegedly gave rise to the breach of contract claims, namely, a failure to make payments, refusing to supply information, and that Callagy Law should be liable for those contractual debts.

It is well-settled under New Jersey law that "where a claim for breach of the implied covenant of good faith and fair dealing is premised upon the same conduct as a breach of contract claim, the claim cannot stand and must be dismissed as duplicative or redundant." *MZL Capital Holdings, Inc. v. TD Bank, N.A.*, No. 14-5772 (RMB/AMD), 2016 U.S. Dist. LEXIS 103177, at *30 (D.N.J. Aug. 5, 2016); *Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 45 (3d Cir. 2015) (dismissing covenant claim because it was "unsustainable as a duplication of [plaintiff's] breach of contract claim.")). Thus, an alleged "breach of the implied covenant of good faith and fair dealing does not create an independent cause of action when it is based on the same underlying conduct as the breach of contract claim." *Creative Concepts Mfg. v. Team Beans Ltd. Liab. Co*., No. 17-cv-6066-BRM-DEA, 2018 U.S. Dist. LEXIS 71891, at *11 (D.N.J. Apr. 30, 2018) (quotation omitted). Courts have recognized that an independent cause of action for breach of the covenant of good faith and fair dealing may arise in three distinct situations: (1) to allow the inclusion of additional terms, in the contract, but "consistent with the parties' contractual expectations"; (2) to redress "bad-faith performance of an agreement," when it is a "pretext" for wrongful termination; and (3) to "rectify a party's unfair exercise of discretion regarding its contract performance." *Kumon N. Am., Inc. v. Timban*, No. 13-4809, 2014 U.S. Dist. LEXIS 84907, at *7-8 (D.N.J. June 23, 2014) (quotation omitted)). None of these situations apply here.

First, the bases for the alleged breach of the covenants (failure to make payments, failure to provide case information, and the creation of Callagy Law) are already pled as the factual bases to support the breach of contract claims. (SAC, Count One, ¶¶ 105, 107-08; Count Two, ¶¶ 123-24, 129.) In other words, the breach of contract and good faith and fair dealing claims arise under, and are based upon, precisely the same conduct. When that is the case, the claims are duplicative and the covenant claim must be dismissed. *TBI Unlimited, LLC v. Clear Cut Lawn Decisions,*

*LLC*, No. 12-3355 (RBK/JS), 2013 U.S. Dist. LEXIS 162025, at *8-9 (D.N.J. Nov. 14, 2013) (holding that a party "may not sustain a separate cause of action for breach of the covenant . . . based on the same conduct that has given rise to their breach of contract"); *Hahn v. OnBoard LLC*, No. 09-3639, 2009 U.S. Dist. LEXIS 107606, *15 (D.N.J. Nov. 16, 2009) (dismissing covenant claim because it "and arises out of the same action" as the breach of contract claim).

Second, Plaintiff admits that the agreements "contain no provisions establishing an express obligation . . . to provide LCG with information about the funded cases." (SAC ¶ 143.) Instead, Plaintiff is apparently suggesting that it has an independent cause of action for breach of the covenant to "allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations," one of the narrow permissible bases. *Barrows*, 465 F. Supp. 2d at 365. Nowhere in the SAC, however, does Plaintiff plead any facts supporting the parties' belief as to this contractual expectation.[4] The SAC contains no factual allegations that would answer these questions, as is required under our pleading standards, instead providing only unadorned conclusions. *See Iqbal*, 556 U.S. at 678. For these reasons, Count Three of the SAC should be dismissed as to all parties.

III.   **The Fraud Claim Fails is Barred by the Economic Loss Doctrine.**

The bases for Plaintiff's proposed fraud claim (Count Four) are alleged representations that Mr. Callagy made to Plaintiff during contract negotiations. One representation was that the funding (made pursuant to the contract) would be secured by the cross-collateralization of "all their personal injury matters, present and future." (SAC ¶ 146*.*) Plaintiff alleges that this representation was false, and that Mr. Callagy knowingly made this false statement knowing that

---

[4] For example, was the provision of case information discussed during negotiations, but then not reduced to writing? Was information promised by SRC LLC, or otherwise verbally agreed to? From where does this obligation arise, other than Plaintiff's unstated expectation?

Plaintiff would rely on it, to its detriment.  (*Id.* at ¶¶ 147-149.)  Plaintiff also alleges that Mr. Callagy made false representations regarding the inapplicability of usury laws.  (*Id.* at ¶¶ 151-53.)

Plaintiff's attempt to plead a fraud claim fails as a matter of law because it is no more than a dressed-up version of its breach of contract claims—a failure to perform according to the contract terms.  "The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'"  *Ribble Co. v. Burkert Fluid Control Sys.*, No. 15-6173, 2016 U.S. Dist. LEXIS 161746, at *7 (D.N.J. Nov. 22, 2016) (quotation omitted).  Thus, "courts in this district generally distinguish between claims intrinsic to the contract, which are barred by the doctrine, and claims extrinsic to the contract, which are not."  *Id.*  "An alleged misrepresentation is extraneous to an agreement when it breaches a duty separate and distinct from the performance of the agreement's terms."  *Flint Grp. Packaging v. Fox Indus.*, No. 16-cv-03009, 2020 U.S. Dist. LEXIS 195388, at *30 (D.N.J. Oct. 20, 2020); *Qile Chen v. HD Dimension, Corp.*, No. 10-863 (FLW), 2010 U.S. Dist. LEXIS 120599, at *28 (D.N.J. Nov. 15, 2010) (dismissing claim, as "alleged fraudulent acts arise from . . . non-performance [] of the [contract].").

Here, Plaintiff's allegations of fraud cannot be divorced from Defendants' contractual performance.  In other words, had Defendants performed the contracts in accordance with Plaintiff's interpretation—that "all their personal injury matters, present and future" would be cross-collateralized (SAC ¶ 146)—then there would be no "fraud."  But that, of course, is simply a restatement of Plaintiff's breach of contract claim.  To plead a fraud claim alongside a breach of contract claim, the fraud must be "unrelated to the performance of the contract."  *State Capital Title*, 646 F. Supp. 2d at 676; *Qile Chen*, 2010 U.S. Dist. LEXIS 120599, at *8 (fraud claim may proceed if "involve[s] misrepresentations unrelated to the performance of the contract").

Specifically, the Funding Agreement contains an express provision as to cross-collateralization obligations.  (*See* ECF 9-1, at 2-3, "Cross-Collateralization: SRC and the Firm hereby unconditionally and irrevocably agree to cross collateralize all PI Matters the firm currently has pending and all PI Matters it is retained on in the future. . . .").  The interpretation of this provision, and whether Defendants performed, are coextensive with the legal and factual questions that underpin the alleged fraud (*i.e.*, what did Defendants represent and was it true?).  In other words, a misrepresentation about agreeing to certain cross-collateralization terms and breaching an express cross-collateralization provision, are not unrelated questions—they are exactly the same question.  The two cannot be separated, and certainly, the alleged fraud is not "unrelated" to the contract, as would be required to properly plead the claim.  *RNC Sys. v. Modern Tech. Grp., Inc*., 861 F. Supp. 2d 436, 453 (D.N.J. 2012) (dismissing fraud claim where the "two purported misrepresentations are addressed squarely within the language of the [contract] and are intrinsic to [the] performance under the contract and have the same measure of damages."); *Montclair State Univ. v. Oracle USA, Inc.*, 2012 U.S. Dist. LEXIS 119509, at *15 (Aug. 23, 2012) (same).

Moreover, the agreement contains an integration/merger clause provision.  (SAC, Ex. 1, at 6, "Entire Agreement.  This Agreement constitutes the entire agreement between the parties. . . . This Agreement supersedes all prior and contemporaneous agreements, understandings," etc.)  This is significant: courts in this District have held that the inclusion of such a provision bars a fraud claim based on representations made prior to the contract.  *Blanos v. Penn Mut. Life Ins. Co*., No. 09-5174, 2010 U.S. Dist. LEXIS 2326, at *16-17 (D.N.J. Jan. 12, 2010) (integration clause conclusively rebutted fraud claim, as it "supersede[d] and replace[d] all prior negotiations, proposed agreements and agreements, written or oral"); *Chazanow v. Sussex Bank*, No. 11-1094 (CCC), 2013 U.S. Dist. LEXIS 113007, at *13-14 (D.N.J. Aug. 9, 2013) (dismissing fraud claim

due to integration clause); *Qile Chen*, 2010 U.S. Dist. LEXIS 120599, at *24 (same). For that reason too, Count IV must be dismissed as against all Defendants.

IV.   **Plaintiff's Breach of Fiduciary Duty Claim Fails as a Matter of Law.**

Count Five of the SAC purports to plead a claim for breach of fiduciary duty. For at least two reasons, this claim should be dismissed. First, the primary basis for this claim appears to be that Defendants breached a duty to Plaintiff by virtue of the negotiation, execution, and performance of the contracts at issue. But like the fraud claim, that theory of a breach of fiduciary duty is barred by the economic loss doctrine, which, as discussed above, bars a claim encompassed by the contract. Second, to the extent Plaintiff seeks to articulate the existence of a fiduciary relationship and breach of duty separate and distinct from the contracts and the parties' obligations thereunder, it fails to plead—as it is required to do—the fact that the parties had unequal bargaining power, or that Defendants exerted some sort of domination over LCG, an experienced legal funder. For these reasons, the SAC fails to plead a plausible theory, and the claim must be dismissed.

Just as with regard to the fraud claim, "[t]he purpose of the economic loss doctrine, in part, is to prohibit plaintiffs from using tort law to alter contractual remedies or to replace a breach of contract action. *Svigals v. Lourdes Imaging Assocs., P.A.*, No. 18-1736 (NLH/JS), 2018 U.S. Dist. LEXIS 200251, at *9 (D.N.J. Nov. 27, 2018) (citation omitted). Because a claim for breach of fiduciary duty is unquestionably a tort claim, *Abreu v. Ginnie Mae*, No. 15-1710, 2015 U.S. Dist. LEXIS 191475, at *7 (D.N.J. Nov. 23, 2015) (Arleo, J.), "where a breach of a fiduciary duty is intrinsic to the breach of contract, the economic loss doctrine bars tort claims for breach of the duty." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 11-1857(DMC)(JAD), 2012 U.S. Dist. LEXIS 162800, at *24 (D.N.J. Nov. 14, 2012). Here, the proposed SAC alleges that Defendants violated a perceived fiduciary duty by persuading LCG to enter into the contracts at issue (SAC ¶ 163(a)); by drafting the contracts (notwithstanding a purported conflict of interest) (*id.* ¶ 163(b));

by advising LCG that the rates were not usurious (*id.* ¶ 163(c)); by forming a new entity to evade the debts (*id.* ¶ 163(d)); and by withholding information about the cases. (*id.* ¶¶ 163(e).) As with the fraud claim, however, it is impossible to divorce these allegations from the parties' rights and obligations under the contract.

The negotiation, execution, and performance of a contract cannot create or give rise to an independent breach of fiduciary duty claim. *Glenz v. RCI, LLC*, No. 09-cv-378 (PGS), 2010 U.S. Dist. LEXIS 4212, at *16 (D.N.J. Jan. 15, 2010) (claim barred where "it flows directly from the parties' contract."); *State Capital Title*, 646 F. Supp. at 678 (same); *Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*, No. 12-7141 (ES), 2013 U.S. Dist. LEXIS 180132, at *23-24 (D.N.J. Dec. 23, 2013) (dismissing claim as parties were "sophisticated financial institutions that entered into a comprehensive and detailed commercial Contract."). In other words, "[t]o impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Am. Fin. Res., Inc.*, 2013 U.S. Dist. LEXIS 180132, at *23 (quotation omitted). Here, the fiduciary duty claim is predicated upon the commercial relationship established by the contracts, and the harm that allegedly flows from an alleged breach. Thus, that claim must be dismissed.

That said, even to the extent that Plaintiff's theory is distinct from the contractual relationship, the proposed SAC also fails to state a claim because it lacks the necessary element of pleading a relationship of domination and control. The SAC states that Defendants owed Plaintiff a "fiduciary duty of loyalty, trust and good faith," based on the attorney-client relationship and "the long-standing personal relationship between Mr. Callagy and Mr. Prussin." (SAC ¶¶ 161-62.) The personal relationship between Mr. Callagy and Mr. Prussin (a non-party) is based on an alleged "closed familial bond" (*id.* ¶ 18) and Mr. Prussin allegedly treating Mr. Callagy "like a

son." (*Id.* ¶ 19.)  Allegedly, whenever Mr. Prussin had a legal problem, he turned to Mr. Callagy.

(*Id.* ¶ 25.)  Even if true, this would not establish the existence of the fiduciary relationship.[5]

As our courts have noted, "[t]he essence of a fiduciary relationship is that one party places

trust and confidence in another ***who is in a dominant or superior position***."  *Oestreicher v.*

*Rutgers*, No. 02-959 (MCA), 2015 U.S. Dist. LEXIS 144785, at *35 (D.N.J. Oct. 26, 2015) (Arleo,

J.) (quotation omitted) (emphasis added).   "There is no invariable rule which determines the

existence of a fiduciary relationship . . . but there must exist a certain inequality, dependence,

weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or

other conditions, giving to one advantage over the other."  *Alexander v. CIGNA Corp.*, 991 F.

Supp. 427, 437-38 (D.N.J. 1997) (quotation omitted).   Thus, courts have held that a fiduciary

relationship does not exist "in ordinary commercial business transactions," such as breach of

contract claims.  *Id.* at 438.  Here, LCG does not assert any dominance or control by Defendants,

nor that the parties entered into something other than an arm's length litigation finance agreement.

LCG does not allege that it was unsophisticated in such matters—indeed, litigation finance is

LCG's business.  (SAC ¶¶ 1, 29).  Nor is there any allegation whatsoever, and none would be

plausible, that LCG lacked the business acumen to understand the terms of a legal financing

transaction, or had unequal bargaining power regarding the terms of the contracts.  The lack of

such factual allegations is fatal.  *Am. Fin. Res., Inc.*, 2013 U.S. Dist. LEXIS 180132, at *23-24

(dismissing claim where "no facts showing pre- or post-contractual dominance or control by

Defendant; no facts showing that the Parties did not deal at arm's length; and no facts showing

---

[5]  It bears repeating that Mr. Prussin is a non-party, and whatever his close personal relationship with Mr. Callagy may be, it should not be able to form the basis for a claim asserting that LCG was dominated or controlled by Mr. Callagy or his law firm(s).  If ***LCG*** had a pre-existing fiduciary relationship with Defendants, it must plead the facts about its own history with Defendants, which it simply has not done, even in this third iteration of the complaint.

that the parties entered into something other than an ordinary commercial relationship*.");* *Fischell*
*v. Cordis Corp*., No. 16-cv-00928 (PGS), 2016 U.S. Dist. LEXIS 131260, at *23 (D.N.J. Sep. 26,
2016) (same).  Instead, LCG is ostensibly a sophisticated litigation financier (SAC ¶¶ 1, 29) and a
claim that it had unequal bargaining power in a litigation financing contract—its very business—
is simply not plausible.  For these reasons, Count Six of the SAC should be dismissed.

## V.      Plaintiff's Legal Malpractice Claim Must Be Dismissed.

Count Six of the SAC is for "legal malpractice."  This claim fails as a matter of law because
Plaintiff fails to plead facts showing either an "express" or an "implied" attorney-client
relationship as between LCG and Defendants, and that the drafting of the contracts at issue was
within the scope of that relationship.   Plaintiff alleges that, prior to the formation of LCG,
Mr. Prussin established an attorney-client relationship with Mr. Callagy in 1998, when
Mr. Callagy handled a matter regarding a business dispute for Mr. Prussin.  (SAC ¶¶ 21-23.)
Mr. Prussin's personal attorney-client relationship with Defendant allegedly continued from 1998-
2019, encompassing various other matters.  (*Id*. ¶¶ 24-26.)  Plaintiff then jumps to the conclusion
that the contracts were drafted by Defendants on behalf of Mr. Prussin and LCG, with Defendants
"acting as Mr. Prussin's and LCG's attorney."   (*Id*. ¶¶ 31, 48.)  Plaintiff concludes that "each
Defendant had an attorney-client relationship with the Plaintiff," and that "the Callagy Firm
represented Prussin and LCG, and acted as their attorneys."  (*id*. ¶¶ 168-169.)

"The elements of a legal malpractice claim are: '(1) the existence of an attorney-client
relationship creating a duty of care upon the attorney; (2) the breach of such duty; and (3)
proximate causation.'"  *Speeney v. Rutgers*, 673 F. App'x 149, 153 (3d Cir. 2016) (quotation
omitted).  Importantly, a lawyer's duty of care to his or her client extends to those matters "within
the scope of the representation." *Cottone v. Fox Rothschild, LLP*, No. A-0420-12T4, 2014 N.J.
Super. Unpub. LEXIS 2143, at *22 (App. Div. Sep. 2, 2014) (quotation omitted).  Here, Plaintiff

states that the contracts were drafted "on behalf of" LCG, but provides no facts to support that bare-bones—and implausible—conclusion.  Without facts which, if true, would support the existence of an attorney-client relationship, and that the drafting of these contracts was within the scope of that relationship, there can be no plausible legal malpractice claim by LCG.[6]

First, "[u]nder New Jersey law, an attorney-client relationship may be express or implied." *Id.*  Here, Plaintiff has not pleaded facts that, if true, would establish either an express or an implied attorney-client relationship, and Plaintiff's bare legal conclusion that an attorney-client relationship existed is not entitled to a presumption of truth and should be disregarded.  *Iqbal*, 556 U.S. at 678; *Santiago*, 629 F.3d at 128.  Under New Jersey law, an express attorney-client relationship "is created **with respect to a particular matter**" when "a person manifests to a lawyer that person's intent that the lawyer provide legal services" and "the lawyer manifests to the person consent to do so."  *Dixon Ticonderoga Co. v. Estate of O'Connor*, 248 F.3d 151, 169 (3d Cir. 2001) (quotation omitted) (emphasis added)).  In the SAC, Plaintiff does not plead any facts stating that it sought to retain Defendants for legal services for **any** "particular matter", *i.e.*, for the drafting of the Funding and Light Agreements.  For example, there is no allegation that a written retainer agreement,[7] covering these activities, exists, nor is it alleged that LCG specifically engaged Defendants for these particular services, nor paid for them.  Rather, Plaintiff states only the

---

[6]  Again, Mr. Prussin has chosen not to be a plaintiff in this matter.  His personal long-standing attorney-client relationship with Mr. Callagy, if true, cannot fairly form the basis for an attorney-client relationship as between LCG and any of the Defendants.

[7]  The lack of a written engagement letter is noteworthy.  *Cottone*, 2014 N.J. Super. Unpub. LEXIS 2143, at \*24 (whether an express attorney client relationship was created is "facilitated when the parties have entered into a written retainer agreement setting forth the scope of representation by the attorney.")  Under New Jersey Rule of Professional Conduct 1.5(b), "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated in writing."  *See also Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 N.J. Super. 510, 518, 531 (App. Div. 2009) (noting that the "retainer agreement" is the "bedrock" of the "attorney-client relationship," and that "[t]he writing requirement is intended to avoid misunderstandings").

unadorned conclusion that Defendants drafted the agreements "on LCG's behalf."  This alone is insufficient to plead that Defendants were expressly retained by LCG to draft the contracts. *Westcor Land Title Ins. Co. v. Alicea*, No. 19-8474 (SDW) (LDW), 2019 U.S. Dist. LEXIS 213079, at *12 (D.N.J. Dec. 10, 2019) (dismissing claim due to failure to "plead any other facts showing an explicit attorney-client relationship, such as the existence of [written agreement]; that [alleged client] had the power to hire or fire [the attorney]; or that [alleged client] received legal bills or made payments."); *Speeney v. Rutgers*, 673 F. App'x 149, 153 (3d Cir. 2016) (no express attorney-client relationship where "they did not enter into any written agreement with [firm] and were not expressly advised by [firm] that the law firm represented them.  Nor do they dispute that they received no bills from [firm], made no payments to [firm]").

Likewise, Plaintiff has failed to plead the existence of an implied attorney-client relationship with Defendants.  "An implied attorney-client relationship is created when a person manifests to a lawyer the person's intent that the lawyer provide legal services to the person, the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services."  *Speeney*, 673 F. App'x at 153 (quotation omitted).  Importantly, "[t]he finding of an implied attorney-client relationship requires more than a subjective belief that such relationship exists."  *Oestreicher v. Rutgers*, No. 02-959 (MCA), 2015 U.S. Dist. LEXIS 144785, at *21 (D.N.J. Oct. 26, 2015).  "[T]he common thread . . . is reliance by the 'client' on the professional skills of the attorney coupled with the attorney's awareness of that reliance and tacit acceptance of it."  *Id*. at *22 (quotation omitted)).

Again, there are no facts in the proposed pleading stating (a) that LCG manifested an intent that Defendants would provide legal services to LCG with regard to the contracts at issue, (b) that Defendants failed to manifest a lack of consent to do so, or (c) that Defendants should have known

that LCG was relying on Defendants' legal advice in drafting the agreements. "Before a professional obligation is created, there must be some act, some word, some identifiable manifestation that the reliance on the attorney is in his professional capacity." *In re Palmieri*, 76 N.J. 51, 60 (1978). Here, there are no facts in the SAC setting forth any manifestation that LCG relied on Defendants with regards to the drafting of these agreements. Courts have dismissed causes of action for legal malpractice that fail to plead the existence of an implied attorney-client relationship as to a specific scope of representation. *Westcor Land Title Ins. Co.*, 2019 U.S. Dist. LEXIS 213079, at *12-13 (claimant failed to "plead an implied attorney-client relationship, as they do not allege facts showing they manifested an intent to retain [the attorney], such as allegations that [alleged client] solicited legal advice from [the attorney] or that they discussed" the matter for which malpractice was alleged); *see also In re Silverman*, 113 N.J. 193, 196 (1988) (no implied relationship created in business deal with former client, as "it is difficult to imagine that [claimant] could reasonably have assumed respondent was acting as *his attorney* in negotiating the terms.")

Likewise here, it is not alleged in the SAC that, for example, LCG directed the agreements to be drafted, or that LCG asked Defendants for advice about the agreements or to protect its interests, or that LCG even engaged in any substantive dialogue with Defendants about the terms, such that one could reasonably infer that LCG was relying on Defendants for legal advice. At best, the proposed SAC offers the single "fact" that the agreements were drafted on "LCG's behalf, acting as Mr. Prussin's and LCG's attorney." (SAC ¶ 31.) But this allegation is simply too conclusory to be sufficient. Nor is this theory at all plausible: after all, this is a case in which a litigation funder claims that it hired, as its lawyer, the very entity it was funding and investing in. That claim obviously makes no practical sense, but more to the point, there are no details pleaded

from which the court could plausibly infer the creation of such a relationship.  For these reasons, Count Six fails as a matter of law and it must be dismissed.

## VI.    Plaintiff Should Not Be Able To Plead a Redundant Unjust Enrichment Claim Based on the Same Conduct Underpinning the Breach of Contract Claim.

Count Seven of the SAC asserts a claim for unjust enrichment, based again on the same conduct as is described in its other counts.  (SAC ¶¶ 176-183.)  Under New Jersey law, "[t]o establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, No. 07-1342 (HAA), 2008 U.S. Dist. LEXIS 11902, at *30 (D.N.J. Feb. 19, 2008) (quotation omitted).  But, critically, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant *beyond its contractual rights*." *Id.* (emphasis added).  "The phrase 'beyond its contractual rights' implies that a benefit conferred upon a party to a contract that arguably provides for such benefit would not be recoverable in a quasi-contract claim such as unjust enrichment." *Id.*  Thus, " [w]here there is an express contract covering the identical subject matter of the claim, plaintiff cannot pursue a quasi-contractual claim for unjust enrichment." *Id.* (quotation omitted).[8]

Here, there are express contracts covering the identical subject matter of the claim, and no facts regarding actions beyond the parties' contract obligations.  Plaintiff's unjust enrichment claim thus seeks repayment for the funds advanced under the contract (SAC ¶ 177), and alleges

---

[8]  Of course, courts will allow the pleading of alternative theories of liability, under appropriate circumstances. *See* Fed. R. Civ. P. 8(d)(3); *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, No. 15-3103 (KM) (JBC), 2016 U.S. Dist. LEXIS 57186, at *21 (D.N.J. Apr. 29, 2016) ("an unjust enrichment claim is a backstop cause of action that often turns out to be superfluous if, for example, a breach of contract is shown) (quotation omitted).  However, as discussed above, courts should dismiss unjust enrichment claims that expressly *rely* on the contract, rather than pleading additional facts *beyond* the parties' contractual rights.

that Defendants "took affirmative steps . . . to extinguish SRC LLC's contractual obligations and LCG's contractual rights." (SAC ¶ 178.)  The unjust enrichment claim, then, is predicated squarely upon the contract rights at issue, rather than on some promise or quasi-contract beyond the parties' contractual rights.  Because the claim is, then, squarely redundant of the breach of contract claims, it should be dismissed.[9]  *Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*, No. 09-6566 (MLC), 2010 U.S. Dist. LEXIS 128289, at *15 (D.N.J. Dec. 6, 2010) (dismissing unjust enrichment claim based on same subject matter as a valid contract); *Dialectic Distribution, LLC v. Power Play Mktg. Grp., LLC*, No. 2:18-03388, 2018 U.S. Dist. LEXIS 217827, at *9 (D.N.J. Dec. 28, 2018) (same).  Therefore, Count Seven should be dismissed.

## VII.   The Civil Conspiracy Claim Fails as a Matter of Law.

The eighth count of the SAC is for "civil conspiracy."  Under New Jersey law, "[a] valid civil conspiracy claim must allege (1) a combination of two or more persons; (2) a real agreement or confederation with a common design, (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means, and (4) proof of special damages."  *Peters v. United States HUD*, No. 04:06057 (RBK), 2006 U.S. Dist. LEXIS 4727, at *22 (D.N.J. Feb. 1, 2006) (citation omitted).  Count Eight charges that "Defendants, acting in concert, agreed and conspired to" commit fraud (SAC ¶ 185), breach the contracts (*id*. ¶ 186), and violate their legal and fiduciary duties (*id*. ¶ 187).  Plaintiff then pleads various acts allegedly taken by each defendant (*id*. ¶¶ 189-191), and alleges that the intent of the conspiracy was to deprive Plaintiffs of their "contractual and legal rights."  (*id*. ¶ 192.)  Finally, Plaintiff claims that the damages that flow from the

---

[9]  At minimum, the unjust enrichment count should be dismissed as to SRC LLC, as there is no dispute that SRC LLC and Plaintiff are parties to the contracts.  And while quasi-contract claims could theoretically proceed against Mr. Callagy and Callagy Law (which are not parties to the express contracts), Plaintiff fails to plead the specific conduct as to how each of those defendants retained or received the benefit of Plaintiff's funds (which they did not).

conspiracy amount to "$474,794.64 plus interest." (SAC ¶ 193.) For several independent reasons, Count Eight of the SAC must be dismissed.

First, "there can be no action in civil conspiracy for breach of contract," as conspiracy is grounded in tort law. *Trico Equip., Inc. v. Manor*, No. 08-5561 (RBK/KMW), 2011 U.S. Dist. LEXIS 17936, at *24 (D.N.J. Feb. 22, 2011) (quotation omitted). Therefore, paragraph 186 and any reference to a conspiracy to deprive Plaintiff of its "contractual" rights must be stricken.

Second, if the fraud claim is dismissed pursuant to the economic loss doctrine, as discussed above, the derivative conspiracy to commit fraud (SAC ¶ 185) must also be dismissed. *Oliver v. Funai Corp.*, No. 14-cv-04532, 2015 U.S. Dist. LEXIS 169998, at *14-15 (D.N.J. Dec. 21, 2015) ("because the Court dismisses Plaintiffs' [fraud claim] . . . , so too must the Court dismiss Plaintiffs' derivative claim of civil conspiracy to commit fraud."). If Count Four is dismissed, then paragraph 185 and any reference to a conspiracy to commit fraud must also be stricken.

Third, Mr. Callagy and the two entities he owns and/or controls are legally incapable of conspiring with each other. To the contrary, the "intracorporate conspiracy doctrine" has long been interpreted to prohibit claims that an officer (*i.e.*, Mr. Callagy) conspired with his organization (*i.e.*, SRC LLC or Callagy Law). *Heffernan v. Hunter*, 189 F.3d 405, 412 n.5 (3d Cir. 1999); *see also Sunkett v. Misci*, 183 F. Supp. 2d 691, 722 (D.N.J. 2002) ("When the officers of a corporation are acting in their corporate capacity, they cannot conspire with the corporation alone.").[10] Thus, there can be no cognizable claim that Mr. Callagy engaged in a conspiracy with

---

[10] "The exception is if the officers are acting outside the course and scope of their employment, in which case they are no longer representing the employer entity." *World Express & Connection, Inc. v. Crocus Invs., LLC*, No. 15-8126 (KM) (MAH), 2020 U.S. Dist. LEXIS 156525, at *57 (D.N.J. Aug. 28, 2020) (quotation omitted). Here, there is no allegation that Mr. Callagy was acting in a personal capacity, separate and distinct from his position as an officer or principal of the two entities.

his own law firm(s).   Likewise, two entities allegedly wholly owned and controlled by Mr. Callagy—SRC LLC and Callagy Law—cannot conspire with each other, as they are treated as a single entity for conspiracy purposes.  *Am. Capital Acquisition Partners, LLC v. Fortigent, LLC*, No. 13-5571, 2014 U.S. Dist. LEXIS 38003, at *19-20 (D.N.J. Mar. 21, 2014) ("parent corporation and its subsidiaries are legally incapable of forming a conspiracy with one another.").[11]

Fourth, Plaintiff fails to plead "special damages," a required element of a valid conspiracy claim.   A failure to plead "special damages" is grounds for dismissal.   "*Special*, as contradistinguished from *general* damage, is that which is the natural, but not the necessary, consequence of the act complained of."  *Delzotti v. Morris*, No. 14-7223 (JBS/AMD), 2015 U.S. Dist. LEXIS 120286, at *23 (D.N.J. Sep. 9, 2015) (quotation omitted).   "The usual consequences of a wrong are 'general' damages, and unusual consequences are 'special.'").  *Karachi Bakery India v. Deccan Foods LLC*, No. 14-5600 (JMV), 2017 U.S. Dist. LEXIS 180404, at *30 (D.N.J. Oct. 31, 2017) (quotation omitted).   "Special damages must be specifically pled under Rule 9(g)." *Id.*   Here, the damages claimed for the conspiracy alleged are not unusual or special.   They are simply the damages that flow from the alleged breach of contract, and the lack of special damages warrants dismissal.  *Delzotti*, 2015 U.S. Dist. LEXIS 120286, at *24 ("While the Complaint states that the actual damages from the unlawful transfers were in excess of $1.5 million, nowhere in the Complaint does Plaintiff identify additional special damages resulting from Defendants'

---

[11]   This rule is often employed in antitrust matters.   "Because 'substance, not form, should determine whether an entity is capable of conspiring,' legally separate entities are sometimes considered single entities for antitrust conspiracy purposes."  *United Ass'n of Plumbers & Pipefitters Local 322 of S. N.J. v. Mallinckrodt ARD, LLC*, No. 20-188 (RBK/KMW), 2020 U.S. Dist. LEXIS 148343, at *36 (D.N.J. Aug. 18, 2020) (quotation omitted).   Thus, "the key question is 'whether there is a contract, combination, or conspiracy amongst separate economic actors ***pursuing separate economic interests***.'"  *Id.* (emphasis added).   There is no allegation—nor could there be—that SRC LLC and Callagy Law are separate economic actors.   To the contrary, Plaintiff alleges that they are one in the same.

conduct."); *Lentini v. McDonald's USA*, No. 19-4596, 2019 U.S. Dist. LEXIS 169180, at *2, *17 (D.N.J. Sep. 30, 2019); *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 412 (D.N.J. 2016) (finding that "lost profits" damages fulfilled the "special damages" element of civil conspiracy).  As the SAC demands only the same damages flowing from the breach of contract and fraud claims—the $441,000 invested funds plus interest—there are no "special" damages resulting from the alleged conspiracy.  Count VIII of the SAC must be dismissed against all parties.

## VIII.    <u>The Accounting Claim is Legally Flawed and Must Be Dismissed.</u>

Count Nine of the SAC seeks an "accounting," and states that the status of the personal injury cases for which Plaintiff allegedly advanced funds is "uniquely within the knowledge of Defendants, is complex, and is difficult to ascertain."  (SAC ¶ 196.)  The SAC states that "Defendants have never provided LCG with an accounting . . . and such information is necessary to determine [the] nature of LCG's security interest."  (SAC ¶ 197.)  For at least two reasons, this claim is legally flawed and must be dismissed.  First, an "accounting" is not an independent stand-alone cause of action.  Rather, an accounting is an equitable remedy.  *Tolia v. Dunkin Brands*, No. 11-3656, 2011 U.S. Dist. LEXIS 142170, at *19-20, n.5 (D.N.J. Oct. 7, 2011).  Thus, courts in this District routinely dismiss claims for an "accounting" where there is no statutory or contractual provision entitling the claimant to one.  *Gonzalez v. U.S. Bank Nat'l Ass'n*, No. 14-7855 (MCA), 2015 U.S. Dist. LEXIS 75620, at *13 (D.N.J. June 11, 2015) (Arleo, J.) (dismissing claim where Plaintiff did not "any contract or statutory provision that entitles him to an accounting"); *Monclova v. U.S. Bank Nat'l Ass'n*, No. 15-7383 (MCA), 2016 U.S. Dist. LEXIS 106127, at *8-9 (D.N.J. Aug. 11, 2016) (Arleo, J.) (same).  Here, there is no statutory or contractual provision entitling Plaintiff to plead a cause of action for an accounting.

Second, like any equitable remedy, an accounting will not be awarded where there is an adequate remedy at law.  *Rainbow Apparel, Inc. v. KCC Trading, Inc*., No. 9-CV-05319 (DMC-

MF), 2010 U.S. Dist. LEXIS 51664, at *18 (D.N.J. May 26, 2010).  Courts have held that the availability of run-of-the-mill pre-trial discovery is such an adequate remedy.  *Delzotti v. Morris*, No. 14-7223 (JBS/AMD), 2015 U.S. Dist. LEXIS 120286, at *28-29 (D.N.J. Sep. 9, 2015) (dismissing claim for accounting where information was "readily obtainable through the normal course of discovery").  Plaintiff here says it needs this remedy is "necessary to determine the precise nature of LCG's security interest, and to calculate what is owed on each case according to the formulae set forth in the Schedules annexed to each contract for each individual funding advance." (SAC ¶ 197.)  But that information is no different from what Plaintiff presumably would and certainly will seek and receive in discovery in an attempt to prove up its breach of contract claim and damages.[12]  An "accounting" adds nothing to the information that will be exchanged via normal course discovery with SRC LLC, and is therefore not a proper stand-alone claim.  Therefore, Count Nine of the SAC should be dismissed.

IX.    **The Declaratory Judgment Claim is Duplicative and Must Be Dismissed.**

Count Ten of the SAC is for a Declaratory Judgment under 28 U.S.C. § 2201.  The relief sought is a finding that the two contracts are "valid and enforceable" (SAC ¶¶ 200-201) and that Defendants "are liable to LCG for the repayment of the funding advances with interest and the cross-collateralization provisions of SRC LLC under the [contracts]." (SAC ¶ 212.)  This claim is nothing more than a recasting of the breach of contract claims, and should be dismissed.

The Declaratory Judgment Act provides that a court "[i]n a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party

---

[12]  For example, did the funded cases and cross-collateralized cases return attorneys' fees to SRC LLC (or Defendants), and what is Plaintiff owed, if anything, as a result?  Plaintiff does not articulate why normal course discovery would leave it with less information than that which it needs to prove its case in any event.  What is owed to LCG on each funded case is simply damages-related discovery on the breach of contract claims (assuming Defendants have any liability at all).

seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).
However, a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct[,] . . . [n]or
is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss v.
O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006); *Alcoa v. Beazer E.*, 124 F.3d 551, 560 (3d Cir. 1997)
("Although a court has discretion to decline to adjudicate a declaratory judgment action . . . a court
should only exercise such discretion if it determines that issuing a declaratory judgment would
serve no useful purpose."). Thus, courts routinely dismiss declaratory judgment claims that merely
duplicate pending breach of contract claims, in particular. *Watkins v. Bai Brands, LLC*, No. 3:17-
cv-2715-BRM-DEA, 2018 U.S. Dist. LEXIS 27237, at *11 (D.N.J. Feb. 20, 2018) (dismissing
redundant declaratory judgment claim); *Lilac Dev. Grp., LLC v. Hess Corp.*, No. 15-7547
(WHW)(CLW), 2016 U.S. Dist. LEXIS 73862, at *10 (D.N.J. June 7, 2016) (dismissing
declaratory judgment claim as "subsumed" in breach of contract claim); *Jakubowski v. Fed.
Emergency Mgmt. Agency*, No. 2:12-cv-02202 (CCC) (JAD), 2013 U.S. Dist. LEXIS 43789, at
*18 (D.N.J. Mar. 27, 2013) (same). Plaintiff's declaratory judgment claim is identical to its breach
of contract claim, and in fact simply seeks a declaration that the contract should be enforced and
Defendants declared in breach according to Plaintiff's preferred interpretation. (SAC ¶¶ 200, 212.)
This claim is not necessary to determine the contractual rights and obligations of the parties, which
will necessarily be accomplished in the disposition of the breach of contract claims. Therefore,
Count 10 of the SAC should be dismissed.

## X.   The $18 Million Damages Demand Should Be Stricken as Frivolous and Impertinent.

The SAC seeks damages "in excess of $18 million" for breach of the Funding Agreement,
pursuant to which Plaintiff—even as alleged—advanced only $441,794.64. (SAC ¶¶ 44, 88, 100,
106, 110, 144, 166, 175.) Plaintiff's arithmetic, yielding this outrageous *ad damnum* claim, is

objectively frivolous, and the claim is plainly impertinent and should be stricken from the SAC pursuant to Local Civil Rule 8.1 and Federal Rule of Civil Procedure 12(f).

First, under the Rules of this Court, Plaintiff should not have demanded a specific amount in the SAC at all.  *See* L. Civ. Rule 8.1 ("A pleading which sets forth a claim for relief in the nature of unliquidated money damages shall state in the ad damnum clause a demand for damages generally without specifying the amount.")  The alleged contractual damages of "in excess of $18 million," are not "liquidated," as they were not a sum agreed upon in the contract, but rather the product of Plaintiff's calculation (or more accurately, miscalculation).  Courts in this district have enforced Local Rule 8.1 and stricken dollar amounts from *ad damnum* clauses.  *H2O Plus, LLC v. Arch Pers. Care Prods., L.P.*, No. 10-3089 (WJM-MF), 2011 U.S. Dist. LEXIS 54767, at *19 (D.N.J. May 17, 2011); *Educ. Impact, Inc. v. Danielson*, No. 14-937 (FLW)(LHG), 2015 U.S. Dist. LEXIS 9467, at *56 (D.N.J. Jan. 28, 2015) ("To the extent that the assertion of $20 million is a demand for damages, it is improper and will be stricken from the Amended Complaint.").  The $18 million demand plainly violates Local Rule 8.1 and should be stricken.

Similarly, Rule 12(f) is properly invoked "to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation."  It is therefore appropriate where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues."  *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (citations omitted).[13]  "A demand for damages that are not recoverable as a matter of law may be stricken pursuant to Rule 12(f).  *Genter v.*

---

[13]  Courts have defined "impertinent" as "[a] statement of matters applied to facts which do not belong to the matter in question, and which is not necessary to the matter in question."  *DirecTV, Inc. v. Weikel*, No. 03-5300 (JBS), 2005 U.S. Dist. LEXIS 9902, at *5 (D.N.J. May 25, 2005).

*Allstate Prop. & Casulaty Ins. Co.*, No. 11-cv-0709, 2011 U.S. Dist. LEXIS 67840, at \*6 (W.D.

Pa. June 24, 2011).  Typically, a motion to strike a damages demand "will be denied unless it is

clear that under no circumstances could the [damages] demand succeed."  *Cox v. Chrysler Grp.*,

LLC, No. 14-7573 (MAS) (DEA), 2015 U.S. Dist. LEXIS 133393, at \*47-48 (D.N.J. Sep. 30,

2015).  Here, there are no circumstances in which Plaintiff's demand for $18 million can succeed,

as a matter of law.  Under the Funding Agreement, the "Growth Factor" is "2.99% per annum,

compounded monthly" for Operational Expenses, and "4.99% per annum, compounded monthly"

for other defined advances.[14]  (SAC, Ex. 1, Funding Agreement, ¶ 4.)  *"Per annum"* means "[b]y,

for, or in each year; annually."  BLACK'S LAW DICTIONARY (11th ed. 2019).  The court can

take judicial notice that there is no mathematical world in which $441,000 becomes $18 million

in seven years (*i.e.*, 2013 to 2020) at a 4.99% per annum rate, compounded monthly.

Plaintiff chooses to ignore the plain language of the contracts—"per annum, compounded

monthly"—and alleges that the schedules attached to the contracts (allegedly initialed by

Mr. Callagy) justify the exorbitant calculations.  Putting aside for the moment the question of

whether an initialed schedule, created after contract execution, can modify the terms of the contract

itself,[15] Plaintiff's entire theory of the case has fallen apart in its most recent pleading.  In this third

iteration of its pleading, Plaintiff—fearful of being accused of usury—suddenly characterizes the

funding advances as "non-recourse" investments.[16]  (SAC ¶ 65 ("as of September 23, 2013,

---

[14]  The "Growth Factor" for these investments (*i.e.*, the advances) operates like an interest rate for
a loan.  However, by their terms, these agreements are not loans, but rather are "non-recourse"
investments, as acknowledged by Plaintiff.

[15]  The document expressly provides that these interest rates—4.99% and 2.99% per annum—
would (1) be in accordance with the terms of the Funding Agreement; (2) supersede all prior
agreements; and (3) control, in the event of a conflict with any other document regarding the
advances.  (SAC, Ex. 1, Funding Agreement, ¶ 3, 4, and 15.)

[16]  Were these loans (rather than non-recourse investments), the rate demanded by Plaintiff would
be plainly usurious.  For $441,000 to become $18 million in seven years, the interest rate would

Mr. Callagy and his firm had received $541,794.64 in non-recourse funding from LCG."); ¶ 153 n. 3 ("LCG's position is that the rate is not usurious; legal funding of this nature is generally considered a non-recourse investment, not a loan.").)  The $18 million demand, thus relies upon attorneys' fees (ECF 27.1, Ex. 1, defining "Proceeds" as "attorney's fees" received by SRC LLC in connection with various matters); but Plaintiff cannot and does not plead any facts to explain its calculation.[17]  Instead, it simply includes an exorbitant *ad damnum* demand in order to prejudice Defendants,[18] amounting to a scandalous allegation under Rule 12(f) that has already resulted in negative press attention, causing reputational harm and damage to good will.  Any references to an $18 million damages demand should be stricken.

## XI.    The Dismissal Should be With Prejudice.

As this is now Plaintiff's third version of its pleading, dismissal of the claims should be "with prejudice."  The Third Circuit has held that "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."  *United States ex rel. Schumann v. AstraZeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (quoting *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140,

---

have to be approximately 54%, a rate that is plainly usurious.  *See* N.J.S.A. 2C:21-19 (maximum rate 50% per annum for corporations and 30% per annum for individuals).

[17] As would be revealed via discovery in the simple breach of contract case by LCG against SRC LLC, the funded cases did not generate any significant recovery of attorneys' fees, entitling LCG to no return on its non-recourse investment.

[18] The "scandalous" nature of this allegation is apparent when one notes the substantial negative press attention that this matter has already received, *see, e.g.*, NEW JERSEY LAW JOURNAL, "New Jersey Law Firm Accused in Suit of Defaulting on $18M Debt to Litigation Funder," available at https://www.law.com/njlawjournal/2020/04/27/new-jersey-law-firm-accused-in-suit-of-defaulting-on-18m-debt-to-litigation-funder/ (last visited December 11, 2020); LEGAL NEWSLINE, "Boyhood friendship doesn't stop litigation funder from suing N.J. personal injury lawyer for $18M," *available at* https://legalnewsline.com/stories/536181145-boyhood-friendship-doesn-t-stop-litigation-funder-from-suing-n-j-personal-injury-lawyer-for-18m (last visited December 11, 2020), press attention that, largely focused on the $18 million in alleged damages, has already caused substantial (and likely permanent) loss of good will and reputational harm to the all of the Defendants, even the wrongly joined ones.

144 (3d Cir. 2002)). Here, leave to file the SAC was granted after Plaintiff had the opportunity to review Defendants' arguments for dismissal of the breach of contract claims as to Mr. Callagy, and the breach of the covenant of good faith and fair dealing and accounting claims as to all Defendants. As the SAC is Plaintiff's third pleading of those claims, further leave to amend those claims should not be granted, and they should be dismissed with prejudice.

As to the six (6) new claims, while this brief is Defendants' first opportunity to attack their legal sufficiency, the Court should nevertheless dismiss claims with prejudice where the "legal inadequacy cannot be solved by providing a better factual account of the alleged claim." *United States ex rel. Atkinson v. Pa. Shipbuilding Co*., 473 F.3d 506, 517 (3d Cir. 2007). And here, there are simply no facts that could salvage the six new claims; indeed, all but one of them—the legal malpractice claim, which fails for the lack of an attorney-client relationship—are either barred by the economic loss doctrine (fraud and fiduciary duty), are legally impossible (civil conspiracy), or are plainly duplicative (declaratory judgment and unjust enrichment) of the breach of contract claims. Those claims should all be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the Court should enter an order (*i*) dismissing all claims against all parties, other than Counts One and Two as against SRC LLC and Callagy Law; and (*ii*) striking all references to an $18 million damages demand.

Dated:  December 11, 2020
        Newark, New Jersey

Respectfully submitted,

s/ Lawrence S. Lustberg
Lawrence S. Lustberg, Esq.
Kevin W. Weber, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
llustberg@gibbonslaw.com
*Attorneys for Defendants*

-30-